**IN THE COURT OF APPEALS OF IOWA**

No. 15-1402
Filed October 14, 2015

**IN THE INTEREST OF A.J.,**
**Minor Child,**

**A.J., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for Ida County, Mary L. Timko, Associate Juvenile Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Lisa Mazurek of Kazurek Law Firm, P.C., Cherokee, for appellant father.

Peter Goldsmith of Boerner & Goldsmith Law Firm, P.C., for mother.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, and Meghann Cosgrove Whitmer, County Attorney, for appellee State.

Lesley Rynell of Public Defender's Office, Sioux City, for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

The father appeals from the juvenile court order terminating his parental rights to his child, A.J.[1]  The father maintains the statutory grounds for termination have not been met.  He does not challenge whether termination was in A.J.'s best interests nor does he challenge whether there are permissive factors that weigh against termination.  Because the father has been in prison throughout the pendency of the case and has failed to maintain meaningful contact with A.J., we affirm the juvenile's court order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(e) (2015).

**I. Background Facts and Proceedings.**

The family first came to the attention of the Iowa Department of Human Services (DHS) in April 2012—when A.J. was two years old—after the execution of a search warrant on the family residence.  Law enforcement located methamphetamine and marijuana paraphernalia in the home.  A hair stat test was performed on A.J., which indicated he had been exposed to methamphetamine.  A.J. was adjudicated a child in need of assistance in August 2012.  Domestic violence between the mother and the father continued to be an issue throughout the pendency of the case.  On January 24, 2014, the father was incarcerated due to probation violations.  In April 2014, the child-in-need-of-assistance proceeding was dismissed due to the father's incarceration and the mother's participation in services.  In September 2014, A.J. was removed from the mother's care after an emergency application for removal was presented to the court.  The mother had admitted to DHS that she relapsed on

---

[1] The mother's parental rights were also terminated.  She does not appeal.

methamphetamine and marijuana. A.J. once again tested positive for methamphetamine and was again adjudicated a child in need of assistance in November 2014. The father remained incarcerated throughout the case. The State filed a petition to terminate both parents' parental rights on April 16, 2015. Following the termination hearing, the juvenile court terminated the father's parental rights to A.J. pursuant to Iowa Code sections 232.116(1)(b), (d), (e), (f), and (i).

## II. Standard of Review.

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the

court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

Here, the juvenile court terminated the father's parental rights to A.J. pursuant to Iowa Code section 232.116(1)(b), (d), (e), (f), and (i). When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported in the record. *D.W.*, 791 N.W.2d at 707. Iowa Code section 232.116(1)(e) provides that termination may be ordered when the child in question has been adjudicated a child in need of assistance, has been removed from the physical custody of the child's parent for a period of at least six consecutive months, and the parent has not maintained significant and meaningful contact with the child during the previous six consecutive months and has made no reasonable efforts to resume care of the child.

The father does not dispute that, at the time of the termination hearing, A.J. had been adjudicated a child in need of assistance and had been removed from the father's physical custody for a period of six consecutive months. Rather, he maintains the State has not proved by clear and convincing evidence that he failed to maintain significant and meaningful contact with A.J. He maintains termination under section 232.116(1)(e) is not appropriate because he has "been actively engaging in programs available in the prison system to improve his parenting and had been taking advantage of what limited opportunities he had in order to keep in contact with A.J." In support of his testimony, the father provided the juvenile court with an affidavit listing courses

he participated in while incarcerated. The courses focus on learning parenting skills and anger management skills as well as making healthy choices.

For the purposes of Iowa Code section 232.116(e)(3), "'significant and meaningful contact' includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent." The affirmative duty include financial obligations as well as "continued interest in the child," "a genuine effort to maintain communication with the child," and it "requires that the parents establish and maintain a place of importance in the child's life."

The State has established by clear and convincing evidence that the father has not maintained significant and meaningful contact with A.J. The father may not use his incarceration as an excuse for his limited contact with A.J. *See In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993). The father's probation was revoked in January 2014 after he pled guilty to domestic assault of the mother. He remained incarcerated throughout the pendency of the case. At the time of the termination hearing in June 2015, the father had not seen A.J. in approximately eighteen months.[2] At the termination hearing, the father was asked what contact he had with A.J. since DHS became involved with the family again in September 2014. The father answered, in part, "I honestly have had none really. I wrote him a few letters." We acknowledge the father's positive decision to take the courses available to him while incarcerated, but taking courses or writing a few

---

[2] The caseworker testified that the department of corrections lists the father's anticipated release date in December 2015. The father testified he anticipated receiving a work release as soon as September 2015.

letters is not enough to establish the father has maintained "significant and meaningful contact." We agree with the observations of the juvenile court:

> [The father] made a conscience decision to violate his probation, knowing what the consequences of his actions would be—separation from his son, [A.J.]. While he has written [A.J.] a couple letters expressing his love for his son, they are only words. [The father] did nothing to protect his son from drug exposure, drug usage or domestic violence. He has been incarcerated since January 2014 and has had no face-to-face visitations with [A.J.]. [The father] has provided no financial, emotional or physical support. Due to his incarceration, he has done nothing to assume any parental duties or responsibilities.

Upon our de novo review of the record, we find the State has also established by clear and convincing evidence that termination of the father's parental rights is in A.J.'s best interests and no permissive factor weighs against termination. We affirm.

**AFFIRMED.**